IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**WP COMPANY LLC**
**d/b/a THE WASHINGTON POST**,

    1301 K Street NW
    Washington, DC 20071

        Plaintiff,

v.

**DEPARTMENT OF THE INTERIOR**,

    1849 C Street NW
    Washington, DC 20240

        Defendant.

Case No.

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiff WP Company LLC d/b/a *The Washington Post* ("the *Post*") brings this suit against Defendant the Department of the Interior ("DOI"), and states as follows:

**INTRODUCTION**

1.     This is an action brought pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for declaratory, injunctive, and other appropriate relief.

2.     Through FOIA, the *Post* seeks records related to complaints filed by U.S. Park Police officers about the agency's dispatch radio communication system.

3.     Releasing these records, which relate to potential issues with the communication system of a federal law enforcement agency, will greatly inform the public about "what their government is up to," *Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 773 (1989), with respect to critical emergency communications equipment and systems.

4.     DOI has improperly withheld the records responsive to the *Post*'s FOIA request.

## PARTIES

5. Plaintiff, the *Post*, is a news organization based in Washington, D.C. It publishes the leading daily newspaper, by print circulation, in the nation's capital, as well as the website washingtonpost.com, which is among the most widely viewed news sites in the U.S., reaching tens of millions of unique visitors per month, according to independent auditor comScore. The *Post* also offers an array of mobile, tablet, and digital publishing products, and licenses its proprietary digital experience platform, Arc XP, to more than 1,900 other websites. But outstanding journalism remains the core of the *Post*'s work – and has been recognized with more than 70 Pulitzer Prizes since 1917.

6. Defendant, DOI, is an agency within the meaning of 5 U.S.C. § 552(f)(1). DOI has possession and control of records requested by the *Post*.

## JURISDICTION AND VENUE

7. This action arises under FOIA. This Court has subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(B) & (a)(6)(C)(i). This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

8. Venue is proper in this judicial district under 5 U.S.C. § 552(a)(4)(B).

## FACTUAL ALLEGATIONS

**The Fatal Shooting of Bijan Ghaisar**

9. On November 17, 2017, 25-year-old McLean, Virginia resident Bijan Ghaisar was rear-ended while driving on the George Washington Memorial Parkway.[1] Ghaisar

---

[1] Tom Jackman, *Park Police shooting victim was rear-ended by another car at start of incident, then fled, report says*, Wash. Post (Jan. 18, 2018), https://www.washingtonpost.com/news/true-crime/wp/2018/01/18/park-police-shooting-victim-was-rear-ended-by-another-car-at-start-of-incident-then-fled-report-says/; Tom Jackman, *Video shows Park Police fired nine shots into Bijan Ghaisar's Jeep at close range, killing him*, Wash.

reportedly drove off, and one of the individuals in the other car called 911 and provided Ghaisar's license plate information.[2]

10. Park Police dispatch initially, mistakenly identified Ghaisar's car as "the striking vehicle" in a radio call to two Park Police officers—later identified as Alejandro Amaya and Lucas Vinyard—who were working the overnight shift covering the Parkway.[3]

11. The officers soon spotted Ghaisar's car and began following him.[4] The officers activated their vehicle's lights and sirens, signaling for Ghaisar to pull over.[5]

12. Shortly after the Park Police officers began their pursuit, dispatch contacted them again to inform the officers that Ghaisar was the victim, not the perpetrator, of the earlier collision.[6]

13. One of the officers acknowledged the correction.[7]

---

Post (Jan. 24, 2018), https://www.washingtonpost.com/news/true-crime/wp/2018/01/24/video-shows-park-police-fired-nine-shots-into-bijan-ghaisars-jeep-at-close-range-killing-him/.

[2] *Id.*

[3] Tom Jackman, *Park Police officers who killed Bijan Ghaisar were told before pursuit he wasn't suspect in fender bender, recording shows*, Wash. Post (Aug. 13, 2021), https://www.washingtonpost.com/dc-md-va/2021/08/13/police-told-ghaisar-jeep-struck/; *Commw. of Va. v. Amaya et al. (E.D.Va.), Dr. Chapman Unedited Radio Transmissions Considerations*, Dr. Chapman's Criminal Justice ("*Radio Transmissions*"), https://www.youtube.com/watch?v=n2_CRjXFTJc at 2:48-6:30.

[4] Tom Jackman, *Videos of Park Police shooting given to FBI, but still no information on who was shot, or why*, Wash. Post (Nov. 22, 2017), https://www.washingtonpost.com/news/true-crime/wp/2017/11/22/videos-of-park-police-shooting-given-to-fbi-but-still-no-information-on-who-was-shot-or-why/; Tom Jackman, *Man shot by U.S. Park Police dies, was unarmed, family says*, Wash. Post (Nov. 28, 2017), https://www.washingtonpost.com/news/true-crime/wp/2017/11/28/man-shot-by-u-s-park-police-dies-was-unarmed-family-says/.

[5] Jackman, *Park Police shooting victim was rear-ended by another car at start of incident, then fled, report says*, *supra* n.1.

[6] Jackman, *Park Police officers who killed Bijan Ghaisar were told before pursuit he wasn't suspect in fender bender, recording shows* & *Radio Transmissions*, *supra* n.3.

[7] *Radio Transmissions* at 6:27-28.

14. The Park Police officers were also equipped with a Fairfax County portable radio that night "because of prior problems with the Park Police radio system."[8]

15. The chase concluded when Ghaisar attempted to drive around the officers and they opened fire, shooting more than nine rounds into the vehicle and striking Ghaisar several times, including in the head.[9]

16. Ghaisar was in critical condition when he was taken to the hospital.[10] He was placed on life support and died 10 days later.[11]

17. Ghaisar was unarmed when Officers Amaya and Vinyard shot and killed him.[12]

18. In his interview with the FBI, Officer Vinyard reportedly told the FBI that he "did not know Ghaisar's role in the traffic accident" and that he and Officer Amaya "did not receive information that went out over the radio," despite that the subsequently released recording of the Park Police dispatch radio call does not indicate any communication system difficulties that night, instead revealing that the officers received and acknowledged the information about Ghaisar's role in the accident.[13]

---

[8] Jackman, *Park Police officers who killed Bijan Ghaisar were told before pursuit he wasn't suspect in fender bender, recording shows*, *supra* n.3.

[9] *Id.*; *Justice Department letter declining charges in Ghaisar case*, Wash. Post (Nov. 15, 2019), https://www.washingtonpost.com/context/justice-department-letter-declining-charges-in-ghaisar-case/f478c2df-af9d-47a4-a10b-fb4803f4e160/?itid=sr_126.

[10] Jackman, *Videos of Park Police shooting given to FBI, but still no information on who was shot, or why*, *supra* n.4.

[11] Tom Jackman, *Friends, family honor Bijan Ghaisar, killed by U.S. Park Police, in Lincoln Memorial vigil*, Wash. Post (Dec. 7, 2017), https://www.washingtonpost.com/news/true-crime/wp/2017/12/07/friends-family-honor-bijan-ghaisar-killed-by-u-s-park-police-in-lincoln-memorial-vigil/.

[12] Tom Jackman, *Fairfax police: Bijan Ghaisar had no weapon when he was killed by Park Police*, Wash. Post (Oct. 29, 2018), https://www.washingtonpost.com/crime-law/2018/10/29/fairfax-police-bijan-ghaisar-had-no-weapon-when-killed-by-park-police/.

[13] Jackman, *Park Police officers who killed Bijan Ghaisar were told before pursuit he wasn't*

**Reported Concerns with the U.S. Park Police Dispatch Communication System**

19.     Officer Vinyard's claim that he and Officer Amaya failed to receive critical information through the Park Police's radio transmission system is not unique.  A February 2022 report authored by the Office of the Inspector General ("the OIG") documented considerable safety concerns with U.S. Park Police's Dispatch Operations Center, several of which included substandard dispatch equipment and reported equipment failures.[14]

20.     For example, several dispatch personnel reported to the OIG that "the electrical circuits in the dispatch center are overloaded on a daily basis, which at times results in the temporary failure of critical radio and computer equipment."[15]

21.     The OIG additionally noted that "the wires connecting the [Park Police]'s radio and computer systems are haphazardly organized and not labeled . . . , which has led personnel to disconnect important systems inadvertently and prevented them from efficiently troubleshooting electrical issues."[16]

22.     As a result, the OIG concluded that, among other things, the condition of the dispatch center's equipment undermines its ability to achieve its core public safety mission.[17]

---

*suspect in fender bender, recording shows* & *Radio Transmissions*, *supra* n.3.

[14] Tom Jackman, *Report says Park Police dispatch center has outdated equipment, mold, inability to monitor alarms*, Wash. Post (Feb. 26, 2022), https://www.washingtonpost.com/dc-md-va/2022/02/26/park-police-dispatch/.

[15] U.S. Dep't of Interior, Off. of Inspector Gen., *Safety Concerns and Other Deficiencies at the U.S. Park Police's Dispatch Operations Center in the Washington, DC Metro. Area* (Feb. 25, 2022), https://www.oversight.gov/sites/default/files/oig-reports/DOI/WebRedactUSPPManagementAdvisory.pdf at 6.

[16] *Id*.

[17] *Id*. at 3.

**The *Post*'s FOIA Request**

23. On June 30, 2020, the *Post* submitted a FOIA request to DOI seeking "all 'hazardous condition reports' or complaints filed by U.S. Park Police officers about the Park Police radio communication system," which are also sometimes "referred to as 'hazardous condition numbers,'" dating "back to 2015." A true and correct copy of the *Post*'s request is attached hereto as Exhibit A.

24. More than three years later, on October 5, 2023, DOI denied the *Post*'s request, claiming that the requested records were exempt from disclosure under FOIA Exemptions 6, 7(C), 7(E), and 7(F). DOI indicated that it was withholding 21 pages of records under the four cited exemptions, as well as 26 discrete incident reports under Exemption 7 alone. A true and correct copy of DOI's response letter is attached hereto as Exhibit B.

25. On November 2, 2023, the *Post* appealed DOI's denial of its FOIA request. A true and correct copy of the *Post*'s appeal is attached hereto as Exhibit C.

26. DOI accepted the *Post*'s appeal on November 20, 2023, and assigned it Appeal No. 2024-027. A true and correct copy of DOI's November 28, 2023 correspondence is attached hereto as Exhibit D.

27. The *Post* has not received any further communication from DOI regarding its FOIA request or appeal since the November 28, 2023 correspondence accepting its appeal.

28. To date, DOI has not produced any records responsive to the *Post*'s request.

29. To date, DOI has not informed the *Post* as to the scope of the records, if any, that the agency will produce in response to the request.

30. To date, DOI has not provided a timetable for the production of any records in response to the *Post*'s request.

**CLAIM FOR RELIEF**

**COUNT I**
**Declaratory and Injunctive Relief:**
**Constructive Denial in Violation of FOIA, 5 U.S.C. § 552**

31. The *Post* realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

32. FOIA provides this Court with "jurisdiction to enjoin [DOI] from withholding agency records and to order the production of any agency records improperly withheld from [the *Post*]." 5 U.S.C. § 552(a)(4)(B).

33. The withheld records the *Post* seeks, which are the subject of the *Post*'s appeal to DOI, are agency records within DOI's control.

34. DOI accepted the *Post*'s appeal on November 20, 2023. Ex. D.

35. Pursuant to FOIA, DOI was required to make and communicate to the *Post* a "determination" on its appeal no later than December 19, 2023. 5 U.S.C. § 552(a)(6)(A)(ii).

36. To date, DOI has not made and communicated to the *Post* a "determination" on its appeal within the meaning of 5 U.S.C. § 552(a)(6)(A)(ii). DOI has instead failed to respond entirely to the *Post*'s appeal, amounting to a constructive denial of that appeal.

37. There is no basis under FOIA to withhold, in whole or in part, the records that the *Post* requested from DOI. DOI has wrongfully withheld agency records in violation of FOIA.

38. The *Post* requests a declaratory judgment that DOI has violated FOIA and that the *Post* is entitled to immediately receive the requested records.

39. The *Post* further requests that, pursuant to 5 U.S.C. § 552(a)(4)(B), the Court issue an injunction directing DOI to produce the requested records in full and setting a deadline for compliance.

**REQUEST FOR RELIEF**

WHEREFORE, the *Post* respectfully requests that this Court:

A.  Declare DOI's failure to provide responsive records unlawful under FOIA;

B.  Enter an injunction, pursuant to 5 U.S.C. § 552(a)(4)(B), directing DOI to make the requested records available to the *Post*, unredacted, and without further delay, and setting a deadline for compliance;

C.  Provide for expeditious proceedings in this action;

D.  Award the *Post* its costs and reasonable attorneys' fees incurred in this action pursuant to 5 U.S.C. § 552(a)(4)(E); and

E.  Grant such other and further relief as the Court may deem just and proper.

Dated: January 8, 2024            Respectfully submitted,

BALLARD SPAHR LLP

/s/ *Charles D. Tobin*
Charles D. Tobin (#455593)
Maxwell S. Mishkin (#1031356)
1909 K Street NW, 12th Floor
Washington, DC 20006
Tel: (202) 661-2200 | Fax: (202) 661-2299
tobinc@ballardspahr.com
mishkinm@ballardspahr.com

Isabella Salomão Nascimento (*pro hac vice* forthcoming)
2000 IDS Center, 80 South 8th Street
Minneapolis, MN 55402
Tel: (612) 371-3281 | Fax: (612) 371-3207
salomaonascimentoi@ballardspahr.com

*Counsel for Plaintiff WP Company LLC d/b/a The Washington Post*